IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARLON T. YOUNG,

                Petitioner,                        OPINION AND ORDER

    v.                                                                 18-cv-913-wmc

GARY BOUGHTON, Warden,
Wisconsin Secure Program Facility,

                Respondent.

---

      Marlon T. Young seeks a writ of habeas corpus under 28 U.S.C. § 2254. Presently confined at the Wisconsin Secure Program Facility in Boscobel, Wisconsin, Young challenges his March 6, 2015, conviction in the Circuit Court for Kenosha County, Wisconsin, on one count of repeated sexual assault of the same child. On January 2, 2019, the magistrate judge screened the petition under Rule 4 of the Rules Governing Section 2254 Cases and determined that petitioner had failed to provide enough facts to allow the court to find that he was in custody in violation of the laws or Constitution of the United States. (Order (dkt. #4) 2.) Accordingly, the magistrate judge directed petitioner to submit an amended petition with facts supporting each claim.

      In response, petitioner submitted an amended petition, attached to which is the decision of the Wisconsin Court of Appeals affirming his conviction, transcripts of certain proceedings held in the trial court, and some medical records. (Am. Pet. (dkt. #9).) Petitioner asserts the following grounds for relief: (1) the trial court erred in denying petitioner's motion to withdraw his no contest plea; (2) the trial court violated petitioner's Sixth Amendment right to represent himself at trial; and (3) Young's post-conviction

1

counsel was ineffective for "failing to present expert testimony in Young's favor." Petitioner does not set out any facts in support of his claims, but directs the court to the attachments. The Wisconsin Court of Appeals' decision shows that petitioner raised the first two grounds on direct appeal from his conviction. *State v. Young*, 2017 WI App 66, 378 Wis. 2d 219, 904 N.W. 2d 143 (unpublished opinion).

Petitioner's failure to provide any facts in support of his claims is a violation of both the magistrate judge's order and Rule 2(c)(2) of the Rules Governing Section 2254 Cases, and the petition could be dismissed on that basis alone. Nevertheless, the court will give petitioner the benefit of the doubt and assume that his first two claims are the same as raised in the state courts. Even so, those claims will be dismissed because it is plain from the amended petition and its attachments that they have no merit. Young's third claim will be summarily dismissed because it fails to state a claim.

BACKGROUND

The Wisconsin Court of Appeals provided the following account of the trial court proceedings in petitioner's case:

> In 2010, Young was charged with sexually assaulting a four-year-old child who tested positive for herpes and disclosed multiple incidents of sexual contact committed by the defendant. Young initially pled not guilty and trial was continuously delayed, largely as a result of his numerous conflicts with and requests for new attorneys. By the end of November 2012, Young had been represented by six attorneys, all but one of whom withdrew at Young's request or for reasons otherwise attributable to Young's conduct. At a hearing on November 28, 2012, the circuit court permitted attorney number six to withdraw so that another attorney could be appointed, but warned Young that this next attorney would be his last:

> It is getting to the point where you can't just keep on trading for [the] next attorney. If the next attorney doesn't work out and you wish to fire him, which is your right—I just need to be clear with you. You do not have to go forward with an attorney. You can go forward without one also. But I do need to give you the warning that ... should you and that attorney move to withdraw and this court finds that it's for reasons not of the attorney's making but of—of your making, that this court will then find that you have forfeited the right to counsel and that you will then proceed pro se. So, I just need to make that clear with you, Mr. Young.

Attorney Robert Peterson was appointed as Young's seventh attorney and represented Young for almost nine months when, one month before trial, he moved to withdraw. At a hearing on August 23, 2013, the circuit court permitted Peterson to withdraw and determined that by his conduct, Young had forfeited his right to counsel and would serve as his own attorney:

> The court warned you in November of 2012 that Mr. Peterson was your final attorney. Every time we get close to a trial you make allegations that your attorney is not communicating with you or that they are in [some way] committing professional misconduct or that in some way that they are against you. You are entitled to representation, but you're not entitled to serial representation. You can't just continue to go through attorney after attorney after attorney looking for the right one.

One week later, the parties were back in court on the issue of representation. The State had filed a motion requesting that the victim be permitted to testify outside of Young's presence and it became clear that disposition of the motion would be difficult with Young representing himself. The circuit court asked Young if he wanted another appointed attorney and indicated it would be willing to appoint standby counsel. Young asked for further explanation and the circuit court explained that standby counsel was "not co-counsel," but would be "simply standing by to answer how to do things." Young asked if he could just get "another attorney" and the court expressed reluctance to again appoint advocate counsel, citing the sheer number of prior attorneys and Young's purportedly threatening behavior toward Peterson. In protest, Young attempted to explain his behavior toward Peterson and the circuit court agreed to appoint "actual counsel" for Young. Attorney Douglas Henderson was appointed as Young's eighth attorney but soon informed the court that he had a conflict of interest. The circuit court appointed Attorney Christopher Glinski as Young's ninth attorney.

Trial began on May 12, 2014, and Young appeared with Glinski. Before jury selection, Young informed the court that he wanted to enter into a plea agreement. The court began a plea colloquy but when asked if anyone had threatened or coerced him to enter his plea, Young stated that he "was threatened and promised." The court asked for specifics and Young replied, "I plead the Fifth." The court determined it could not accept the plea and the proceedings continued, with the circuit court addressing motions in limine.

Just before the prospective jurors were brought in, Glinski made a statement suggesting that Young now wanted to represent himself. The circuit court asked for clarification, observing that Young had never before asked to represent himself. The following discussion ensued:

> THE COURT: [to trial counsel] Is he—are you telling me at this point Mr. Young is asserting his request to represent himself?
>
> [TRIAL COUNSEL]: He's requesting—well, maybe the court should have a colloquy with him in terms of what exactly he's requesting and the court should outline in terms of, you know, what—what his request would entail and, you know, what's going to happen from here out if he—if the court grants his motion.
>
> THE COURT: Okay. Mr. Young, are you requesting to represent yourself?
>
> THE DEFENDANT: Well, your Honor, you said to me, you said that I can have co-counsel. You said—and my understanding is you said that I didn't know the law so I needed somebody to word it for me, tell me how to word stuff. So yeah, I was asking—I was asking him about it is it possible.
>
> THE COURT: Okay. Are you asking for it right now?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Okay. Have you ever brought this subject back up to Mr. Glinski?
>
> THE DEFENDANT: When?

4

> THE COURT: Have you ever told Mr. Glinski previously that you wished to represent yourself at trial?
>
> THE DEFENDANT: I mean, we had—we have talked about it a couple times. I mean—
>
> THE COURT: Okay. But you never said to him yes, I'd like to represent myself?
>
> THE DEFENDANT: No.

The circuit court called a recess to review transcripts of prior proceedings. Back on the record, the court informed the parties that it had "never received any request from Mr. Young to act as his own attorney." The court denied Young's request, citing the defendant's pattern of delaying the case: "Based on the history of this file I find it to be just another stalling technique and delay in this matter; and therefore, I will deny Mr. Young's request to serve as his own attorney. This matter has been ongoing now for well over four years." Voir dire proceeded and after a jury was selected, the case was adjourned for the day.

The next day, the Sexual Assault Nurse Examiner testified about the exam performed on the victim, S.C., and S.C.'s first interview was played for the jury. Before the jury heard S.C.'s second interview, Young informed the court he wanted to change his plea to no contest.

During a lengthy plea colloquy, the court ascertained that Young had not taken any medications in the last twenty-four hours and that he believed he was thinking clearly. The circuit court accepted Young's plea after determining it was entered "freely, voluntarily, knowingly, and intelligently, with the advice of competent counsel."

Prior to sentencing, Young filed a motion seeking to withdraw his plea, alleging that he had been in pain when he entered his plea, and "[t]hat when the court asked me the questions about accepting the plea, I felt I had no choice but to answer the questions as I did because I felt I was not physically able to make it through the trial due to the pain." Glinski was permitted to withdraw so that he could testify at the evidentiary hearing, and successor counsel was appointed. After hearing the testimony of Glinski and Young, the circuit court denied the motion, determining that Young failed to establish a fair and just reason for plea withdrawal. The court imposed a sixty-year bifurcated sentence.

*Young*, at ¶¶ 2-10.

Young appealed his conviction and sentence, arguing that the trial court had abused its discretion in (1) denying Young's request to represent himself at trial, and (2) rejecting his motion for plea withdrawal. The Wisconsin Court of Appeals rejected both of these claims. Petitioner sought review from the Wisconsin Supreme Court, which declined to review his conviction.

OPINION

A federal court is authorized to grant habeas corpus relief to a state prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court's ability to grant such relief is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "significantly constrain any federal court review of a state court conviction." *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

Moreover, habeas corpus petitions must meet heightened pleading requirements, *see* 28 U.S.C. § 2254 Rule 2(c), with federal courts authorized to dismiss summarily any

6

habeas petition that appears legally insufficient on its face, *see* 28 U.S.C. § 2254 Rule 4. All of petitioner's challenges to his conviction and sentence fall well short of this pleading requirement.

I. **Right of Self-Representation**

The Sixth Amendment guarantees a mentally competent defendant the right to represent himself in a criminal trial. *Faretta v. California*, 422 U.S. 806 (1975). However, this right is not absolute: a judge may deny a defendant's exercise of self-representation when he invokes his right so late as to delay a trial or engages in "serious and obstructionist misconduct." *Id*. at 836, n.46. Whether to deny a defendant's request for self-representation is a matter for the trial court's discretion. *United States v. Brock*, 159 F.3d 1077, 1079 (7th Cir. 1998).

Applying *Faretta* to petitioner's claim, the Wisconsin Court of Appeals found ample support in the record to support the trial court's determination that Young's "eleventh-hour request" to proceed *pro se* was intended as just another delay tactic:

> Not only did Young's request come on the first day of trial, it was prompted by the circuit court's refusal to accept his plea. This is fully consistent with what the circuit court characterized as Young's pattern of finding reasons to delay every time a trial date approached. Further, Young's representation was the subject of multiple hearings, each one an opportunity to assert his desire to represent himself. In fact, the circuit court had directly informed Young of his right to proceed pro se. Instead, Young expressed displeasure when told he had forfeited his right to counsel and, when given the choice, confirmed that he wanted advocate rather than standby counsel.

*Id*. at ¶¶ 12-13.

This was a patently reasonable application of Supreme Court precedent. Certainly, it was not "well outside the boundaries of permissible differences of opinion," *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation marks omitted), or completely inconsistent with the facts and circumstances of the case. *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002). Accordingly, because it is plain that petitioner cannot obtain habeas relief on this claim, it must be dismissed.

## II. Plea Withdrawal

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (internal quotation marks omitted)). This means that defendant needed to have: (1) real notice of the nature of the charges against him, *Henderson v. Morgan*, 426 U.S. 637, 645 (1976); (2) understood the consequences of his plea, including the nature of the constitutional protection he was waiving, *Brady v. United States*, 397 U.S. 742, 755 (1970); and (3) an understanding of the law in relation to the facts, *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

In purely conclusorily fashion, petitioner claims that the trial court should have allowed him to withdraw his plea because it was "made unintelligently." (Am. Pet. (dkt. #9) 5.) The circuit court flatly rejected petitioner's post-plea claim of distracting pain on credibility grounds "for the following reasons:"

> One, he never told his attorney. Two, my observations during the long colloquy in which he did not mention it to me either and my observations during both colloquies ... which showed Mr. Young to be responsive to all of my questions. He did not delay in his response as if he was distracted by

8

> pain. He did not seem confused by my questions which would also show that he was distracted by pain or unable to focus on the questions that I was asking him.

*Young*, at ¶ 15; *see also* Tr. of Oral Dec. on Mot. for Plea Withdrawal, Dec. 5, 2014, at 11, lines 12-22 (Am. Pet. (Dkt. #9-1) 41). The court also noted that: petitioner's testimony about when his pain began was inconsistent with his reports to jail staff; the medical records he submitted did not support his claim that his pain was at a "10" on the day he entered his plea; again, petitioner's many, previous dilatory tactics; and petitioner's history of making allegations that were demonstrably false. (Oral Dec. at 11-14.) On appeal, the Wisconsin Court of Appeals also found that "[t]he circuit court's well-considered and lengthy oral decision was demonstrably based on the facts of record and the applicable law." *Young*, at ¶ 30.

Such a credibility finding by a state court is virtually unassailable on collateral review by a federal court. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."); *Morgan v. Hardy*, 662 F.3d 790, 799 (7th Cir. 2011) (showing deference to state trial court's credibility determinations under § 2254(d)(2)). Here, in particular, the state appellate court was required to defer to credibility findings by the state trial court, and federal courts must defer to the findings of state courts. Given this double layer of deference, petitioner cannot prevail on his involuntary plea claim.

Even if the court were allowed to reexamine the record below more closely, both the trial and appellate courts had expressed more than ample reasons not to believe that

petitioner was in so much pain that he did not understand the plea proceedings. Indeed, as noted above, both cited numerous, independent reasons for that finding, including the trial court's own observations of petitioner during his plea proceeding. On this record, therefore, this court must defer to the credibility determinations of the state courts on habeas review. *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (explaining that federal habeas courts owe a high level of deference to state court credibility determinations). Accordingly, petitioner's claim that his plea was not entered knowingly and intelligently is also legally insufficient on its face.

## III. Ineffective Assistance by Postconviction Counsel

Petitioner's third claim of ineffective assistance by his postconviction counsel must be summarily dismissed as well because it fails to state a claim. Petitioner claims, again in purely conclusory fashion, that his postconviction counsel was ineffective for "failing to present expert testimony in Young's favor" (Am. Pet. (dkt. #9) 9), but does not even indicate what kind of an expert his counsel should have called or on what subject this expert would have testified, much less provide any details about what such an expert might have said that would have changed the outcome of his trial.

The magistrate judge warned petitioner that he risked dismissal of the petition if he did not provide enough facts in his petition to show what his counsel did wrong or how those errors affected the outcome of the proceedings. Because petitioner has not come forth with any supporting facts after being given a second opportunity to do so, this claim will be dismissed.

### IV. Motion to Stay

Finally, petitioner filed a motion to stay these habeas proceedings so he could return to state court to pursue unexhausted claims. (Dkt. #3.) As the magistrate judge also noted in his initial screening order, however, petitioner failed to identify what claims he wishes to pursue in the state courts. Despite the magistrate judge giving petitioner another opportunity to specify his unexhausted claims and their supporting facts (Order (dkt. #4) 4), petitioner still has not done so. Accordingly, the motion for a stay will also be denied.

### ORDER

IT IS ORDERED that:

1. The petition, as amended, is summarily DISMISSED pursuant to Rule 4 of the Rules Governing Section 2254 Cases;

2. The motion for a stay (dkt. #3) is DENIED; and

3. No certificate of appealability shall issue because petitioner has not made a substantial showing of a constitutional right as required by 28 U.S.C. § 2253(c)(3) and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Entered this 15th day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge